NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1057

COMMONWEALTH

vs.

JOSHUA M. JASON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Joshua M. Jason, appeals from a Superior Court judge's order denying his motion to vacate the global positioning system (GPS) monitoring condition of his probation. We affirm.

Background. The victim was eleven years old when she moved into the neighborhood where the defendant lived. In 2012, when the victim was thirteen years old and the defendant was twenty-one years old, the defendant "began to exchange some [text] messages" with her, including messages stating that "he wished he could go back in time and be with her and treat her right." The "messaging progressed," and on November 8, 2012, the defendant came to the victim's home while her family was out. They went into the victim's bedroom and had sexual intercourse. They did so again the following day. Between 2012 and 2014, "as

the relationship progressed," they had sexual intercourse more than fifty times.

In 2014, the victim disclosed her relationship with the defendant and subsequently permitted police investigators to view her cell phone, which revealed several sexually explicit messages and "dating type messages."  In a message dated October 19, 2014, the defendant asked the victim, "How did they find out about the sex?"  Subsequently, on October 20, 2014, and again on October 22, 2014, the defendant texted the victim pictures of his erect penis.  At some point, the victim blocked the defendant on social media.  The defendant then created a false Facebook account to try "to see what [the victim] was doing."

On March 16, 2017, the defendant pleaded guilty to five counts of rape of a child, G. L. c. 265, § 23, and two counts of dissemination of matter harmful to a minor, G. L. c. 272, § 28. He received a sentence of three to five years of incarceration in State prison, followed by five years of probation.  The conditions of probation included a no contact and stay away order for both the victim and her family, sex offender registration, and GPS monitoring, which was mandatory and automatic at the time under G. L. c. 265, § 47.

In March 2019, two years after the defendant's guilty plea, the Supreme Judicial Court held that GPS monitoring under G. L. c. 265, § 47, could no longer be imposed without an

individualized determination of whether the Commonwealth's public safety interests outweighed the probationer's reasonable expectation of privacy. See Commonwealth v. Feliz, 481 Mass. 689, 699-701 (2019), S.C., 486 Mass. 510 (2020). In March 2023, the defendant filed a motion to vacate the GPS monitoring condition of probation (motion to vacate). Following a nonevidentiary hearing, a Superior Court judge (motion judge)[1] issued a written memorandum and order denying the motion to vacate, concluding that "under the particular circumstances of this case, the government has shown that the government's interest in monitoring the [defendant's] location outweighs his right to privacy." This appeal ensued.

Discussion. "Although ordinarily we review a judge's decision on a motion to vacate a condition of probation for an abuse of discretion . . . we conduct an independent review where, as here, the judge's decision was based on a constitutional determination." Commonwealth v. Roderick, 490 Mass. 669, 673 (2022). "In doing so, we accept findings of fact by a judge who saw and heard the witnesses, unless those findings are clearly erroneous, but consider the

_____

[1] Where the judge who conducted the guilty plea hearing had retired, a different Superior Court judge decided the motion to vacate.

3

constitutionality of the search de novo."  Id., citing

Commonwealth v. Feliz, 486 Mass. 510, 514 (2020).

Here, the defendant argues, in essence, that the motion

judge failed to adhere to precedent, see Roderick, 490 Mass. at

673, and made findings unsupported by the record or grounded in

inapplicable factors.  Pursuant to our de novo review, we agree

with the motion judge that at the time of the motion hearing,

continued GPS monitoring was justified.

GPS monitoring constitutes a search under the Fourth

Amendment and art. 14.  Roderick, 490 Mass. at 672.  Because

such a search is more than minimally invasive, it requires an

individualized determination of reasonableness under art. 14.

See Feliz, 481 Mass. at 699-700.  A probationer has "a

significantly diminished expectation of privacy" and is presumed

"more likely than the ordinary citizen to violate the law"

(citations omitted).  Roderick, supra at 673.  Even so, because

GPS monitoring is a significant intrusion on a probationer's

liberty and privacy interests, the Commonwealth must demonstrate

how its legitimate public safety interests outweigh the

probationer's "expectation of privacy in his real-time location

information."  Id. at 674.  We evaluate the strength of the

Commonwealth's interests by considering "the probationer's risk

of recidivism and the danger posed to society should he or she

reoffend; as the probationer's risk of reoffense and degree of

4

dangerousness increases, so too does the weight of the government's interest." Id. at 673. See Feliz, 481 Mass. at 701 ("Whether the government's interest in imposing GPS monitoring outweighs the privacy intrusion occasioned by GPS monitoring, thus constituting a reasonable search, depends on a constellation of factors" and "no one factor will be dispositive in every case").

We begin our analysis by considering the nature and severity of the crime. A probationer's degree of dangerousness, and thus the Commonwealth's "interest in deterrence and investigation," increases with the severity of the crime. Roderick, 490 Mass. at 682. Here, the defendant was convicted of five counts of rape of a child and dissemination of matter harmful to a minor. The seriousness of the offenses was aggravated by the youth of the victim and the defendant's actions to induce her.

We next consider the probationer's classification as a level two sex offender: a determination, based on clear and convincing evidence, that he poses a moderate risk of reoffense and a moderate degree of dangerousness. See Roderick, 490 Mass. at 680; G. L. c. 6, § 178K (2) (b). "[T]he government has a valid interest in deterrence and investigation where the

5

Commonwealth provides sufficient evidence that a defendant poses a demonstrable risk of reoffending."[2]  Roderick, supra at 679.

We also consider, as did the motion judge, the "great number of repetitive and compulsive contact offenses with a child over an extended period of time, the degree of emotional and romantic attachment to the victim that the defendant exhibited, [and] the obsessive behavior of stalking the victim on social media after the relationship was ended by her."[3] Contrary to the defendant's claim, the record supports these findings.  The defendant targeted a child by engaging in communications with her via text messages and Skype.  He told her that "he wished he could go back in time and be with her and treat her right."  The messaging "progressed" and escalated until the defendant went to the victim's home when her family

_____

[2] The defendant acknowledges that "[t]he Superior Court properly relied upon [his] classification at Level 2 by the Sex Offender Registry Board."

[3] In contrast to the present case, Roderick involved two instances of rape of an adult female in a single night. Roderick, 490 Mass. at 670.  The Supreme Judicial Court determined that "although the defendant's [level two] SORB classification . . . provides some reason to believe that he might recidivate, he has no history of doing so."  Id. at 682. "The government has less of an interest in monitoring a potential recidivist than a proven one."  Id. at 682-683.  See Garcia v. Commonwealth, 486 Mass. 341, 355-356 (2020) (government had "significant interest" in imposing GPS monitoring in light of defendant's "repetitive, relatively recent, and dangerous . . . criminal conduct," which showed that "risk of recidivism was not fanciful").

was at work or away and engaged in vaginal intercourse with her. He then repeated that conduct on more than fifty occasions. Upon learning that the victim had disclosed their relationship, and that her mother and others knew about his illicit conduct, the defendant responded by texting photographs of his erect penis to the victim on two occasions. After the victim tried to stop the defendant from contacting her, he created a fake social media account to contact and follow her. In short, we have little difficulty determining that the record supports the judge's findings and conclusions.

We next consider that there was no GPS-enforced exclusionary zone in the present case. The defendant argues that the absence of such is a factor to be considered. See Roderick, 490 Mass. at 681-682 ("There is little question that the Commonwealth's interest in enforcing the exclusion zone around the victim's home, in conjunction with its interest in deterring and investigating future sex offenses, would have outweighed the incremental privacy intrusion occasioned by GPS monitoring in the instant case"). While true, that does not end our analysis. The present case is distinguishable from Roderick. There, the Supreme Judicial court noted that the Commonwealth had been unable to contact the victim and was unsure whether the victim had a domicile or home address that could be used as the basis of an exclusion zone. Roderick,

7

supra at 671, 678.  In the present case, by contrast, the victim attended the hearing on the motion to vacate and submitted a written statement objecting to the motion to vacate.  In that statement, she explained, inter alia, that she "chose not to have exclusion zones for the sole purpose of safety.  The thoughts of knowing that [the defendant] would know the area I was in at most points in my day didn't provide the feeling of security that I deserved."  The judge credited the victim's explanation and found that the absence of any exclusion zone in the present case stemmed from the victim's request "that her address remain anonymous due to fear of the defendant learning where she resides."  The record supports this determination in view of the victim's representations, as well as the judge's finding that, at the time of the hearing, the defendant worked on Cape Cod and the victim lived "in the area."  Put simply, the present case is a far cry from Roderick, and the absence of any exclusion zone in the present case does not affect the calculus in a dramatic way.[4]

Given the seriousness of the offenses, the defendant's level two sex offender classification, his continuous and repeated conduct, his emotional and romantic attachment to the child victim, and the additional information discussed supra, we

_____

[4] See note 3, supra.

8

conclude that the overall balance of interests at the time of the motion hearing justified continued GPS monitoring.[5]

Conclusion.  We affirm the motion judge's order dated May 12, 2023, denying the motion to vacate the GPS monitoring condition of probation.

So ordered.

By the Court (Neyman,
Brennan & Toone, JJ.[6]),

_Anne M. Thomas_

Assistant Clerk

Entered:  June 13, 2024.

---

[5] To the extent we do not discuss other arguments made by the parties, they have not been overlooked.  "We find nothing in them that requires discussion."  Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[6] The panelists are listed in order of seniority.